HALL, Judge.
In this suit plaintiff — subcontractor, O. J. Ward, Inc., asserts two separate and unrelated claims against defendant — contractor, J. G. Madden d/b/a Madden Contracting Company, arising out of three highway construction projects. In connection with the “Shed Road” project, plaintiff seeks to recover $3,245.40 over and above the subcontract price for additional costs and expenses allegedly incurred by plaintiff when the subgrade on which plaintiff was to apply a concrete surface was changed from soil cement to sand by agreement between the Highway Department and defendant. In connection with the “Haynesville” and “Homer” projects, plaintiff seeks to recover $1,978.89 withheld from the subcontract price by defendant, representing the amount of “discounts” allowed by suppliers of materials on certain invoices billed to plaintiff but paid by defendant for plaintiff’s account, defendant having paid the discounted amount of the invoices but having charged plaintiff with the gross amount. From a judgment rejecting its demands, plaintiff appealed. We affirm the judgment of the district court.
I. The “Shed Road” Project.
On November 9, 1966, plaintiff as subcontractor and defendant as contractor, entered into a written contract whereby plaintiff was to construct a concrete surface course over a soil cement subgrade on the Shed Road in Bossier City in accordance with Louisiana Highway Department specifications. On or near the same date the subcontract was signed, the site was inspected by Highway Department engineers who determined that the soil cement sub-grade should be changed to a sand sub-grade. The change was put into effect and the construction work completed accordingly.
Plaintiff contends defendant owes it for additional costs and expenses occasioned by the change in the subgrade. Plaintiff contends that at the time the change was made, defendant verbally agreed to pay the extra cost which was to be calculated after completion of the project and that the original subcontract was verbally amended to that effect. Alternatively, in the event the court finds the contract was not orally modified, plaintiff contends he should recover the additional cost incurred on the basis of quantum meruit, plaintiff having incurred the cost and expense and defendant having been enriched thereby. Defendant contends he did not agree to pay for any extra cost but that on the contrary plaintiff agreed to do the work called for at no change in the subcontract price.
The trial court held plaintiff failed to bear its burden of proving an oral modifi *3 cation to the contract. The trial court rejected. plaintiff’s demands for recovery on the basis of quantum meruit for the reason that plaintiff did not establish with a sufficient degree of certainty the extra work occasioned by the subgrade change or the cost thereof.
The testimony of O. J. Ward and J. G. Madden as to what transpired at the time the change in subgrade was made is irreconcilable. Ward testified he did not know of the change until two or three weeks after the signing of the subcontract. He testified he told Madden the change would result in additional expenditures and that Madden agreed to reimburse him for the extra expense when the project was completed and when plaintiff had computed the expenditures.
Madden testified Ward was present on November 9, the day the subcontract was signed and the day the site was inspected by the Highway Department employees, and was aware of the change made at that time. Madden testified that Ward stated he would “just as soon lay it on sand” and that the only additional cost would be the requirement for water to wet the sand down. Madden testified he volunteered and did in fact supply the water and water truck and, therefore, there was no additional cost to Ward.
Tending to corroborate defendant’s position that there was no agreement to pay additional compensation is a letter written by Ward to Madden after completion of the contract. The letter reads in part as follows:
“Grady, when we figured your job, it was figured with Soil Cement, No Subgrading was necessary or required. The Sand change was made after our agreement, therefore, we were not able to include subgrade cost. The Sand greatly limited our work area for hauling and, reduced our production considerably.
“We believe we should receive some consideration for the above changes.”
If an agreement had been reached to pay for additional expense to the subcontractor, it seems likely that the agreement would have been mentioned in this letter. Had such an agreement been reached, it also seems likely that the agreement would have been reduced to writing in accordance with usual practice. Considering that plaintiff had the burden of proving such an agreement, we agree with the trial court’s conclusion that plaintiff has not borne this burden and that the evidence does not establish that defendant agreed to pay any additional costs.
In order for Ward to recover under the doctrine of quantum meruit, in the absence of a specific agreement to pay for materials and costs incurred in excess of that provided in the contract, it is necessary for Ward to prove that additional materials or services were in fact furnished, the reasonable value thereof, and that the services benefited the defendant. See O. J. Ward, Inc. v. Winford Company, 254 So.2d 152 (La.App.2d Cir. 1971); Voorhies v. Lomenick, 228 So.2d 509 (La.App.3d Cir. 1969). Ward testified that pouring concrete over a sand subgrade rather than a soil cement subgrade required the use of additional workmen to keep the concrete forms lined up, additional concrete, the use of mats so that the sand subgrade would not be damaged, and the use of a planer to smooth the grade of the sand. Plaintiff estimated the additional cost at $.25 per square yard of concrete poured but did not explain or support how he arrived at this figure, except to say that this was the figure agreed upon in connection with another unrelated job in which a similar change in subgrade was made. Plaintiff’s witness, Ross Nelson, Jr. an experienced contractor, testified that ordinarily it would cost $.10-$.15 more per square yard of concrete poured to pour over a sand subgrade as compared to a soil cement subgrade, but the witness also testified there were many *4 variables and that he was not familiar with this particular job.
The trial court concluded, and we agree, that the evidence in this case does not establish with a sufficient degree of certainty the particular extra work or the value thereof. As stated in the Voorhies case, supra:
“It is readily apparent that there are many dangers involved in the application of a doctrine such as quantum meruit which creates obligations where none are contracted for. Such a doctrine is and should be accompanied by the requirement of a strong burden of proof on the part of the person invoking the doctrine.”
The factual issue was susceptible of more definite proof and plaintiff has failed to carry the burden of proof required of it.
II. The “Haynesville” and “Homer” Projects.
In May and July, 1965, plaintiff and defendant entered into a written contract whereby plaintiff was to perform certain construction work as subcontractor on the Haynesville and Homer projects. Both contracts provided that Ward was to furnish and promptly pay for all labor, supplies and materials.
During the course of construction, Ward received invoices from suppliers of cement, which invoices provided for a discount of $.20 per barrel upon payment of the invoices by a certain date. The invoices received by plaintiff were taken to Madden who paid the net or discounted amount prior to termination of the discount date. After completion of the construction projects when defendant paid plaintiff for work performed defendant deducted or withheld the gross amount of the invoices.
Plaintiff contends only the net amount actually paid by defendant should have been withheld from the subcontract price. Defendant contends there was a specific agreement that defendant should get the benefit of the discounts and that it is customary in the construction industry for the prime contractor to get the benefit of the discount where the prime contractor actually pays the bills.
Again the testimony of the principals is in conflict. Ward testified Madden agreed to pay these invoices along with other bills in order that liens would not be filed against" the projects. Madden testified that Ward brought the invoices to him because Ward did not have funds available to pay the invoices prior to the discount date and that there was an agreement that if Madden paid the invoices then he would receive the benefit of the discounts.
The testimony of defendant’s witness, Jim Winford, an experienced contractor, and even the testimony of plaintiff’s witness, Nelson, establishes that it is a custom in the construction industry that where the contractor actually pays the subcontractor’s bills in order to take advantage of the discounted price of materials then the contractor gets the advantage of the discount, unless there is a specific agreement to the contrary. We are in accord with the trial court’s finding that there was no specific agreement to the contrary in this case. Defendant was not unjustly enriched to plaintiff’s detriment because plaintiff could not have paid the invoices prior to the discount date and would have had to pay the gross amount if the bills had not been paid by defendant.
Plaintiff also contends that defendant paid the invoices with money owed to plaintiff because all or part of the construction projects were completed at the time payment of the invoices was made. The evidence does not support this argument because it does not appear that any money was due by defendant to plaintiff under the terms of the contracts at the time the invoices were paid.
For the reasons assigned, the judgment of the district court is affirmed at appellant’s cost.
Affirmed.